UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| RICHARD CUELLO, | Plaintiff, | DECISION and ORDER |
| -vs- | | 16-CV-6564 CJS |
| T. E. LEPKOWSKI, | Defendant. | |

_____

INTRODUCTION

Richard Cuello ("Plaintiff") is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who maintains that T.E. Lepkowski ("Defendant" or "Lepkowski"), a hearing officer employed by DOCCS, violated his federal due process rights at a prison disciplinary hearing. Now before the Court is Defendant's motion (Docket No. [#4]) to dismiss the Amended Complaint for failure to state a claim. The application is granted.

BACKGROUND

For purposes of this Decision and Order, the following facts are taken from the Amended Complaint and from documents in a related state-court proceeding of which the Court may take judicial notice. In March, 2016, Plaintiff was confined at Elmira Correctional Facility ("Elmira"). At all relevant times, defendant Lepkowski was employed at Elmira as an Education Supervisor, and also served as a disciplinary hearing officer. On March 27, 2016, Plaintiff was issued two misbehavior reports by a non-party, Corrections Sergeant J. Powers. The first misbehavior report charged Plaintiff with conspiracy to introduce drugs into the facility and smuggling, while the second report charged him with drug possession and smuggling. Plaintiff, who was born and raised in

1

the Dominican Republic, contends that he is not fluent in English and needs an interpreter to manage everyday prison life. After being served with the misbehavior reports, Plaintiff was assigned a Spanish-speaking assistant to help prepare his defense. However, Plaintiff contends that the assistant saw him only once and refused to accept his written requests for documents and witnesses. Defendant Lepkowski was assigned as the hearing officer, and on March 31, 2016, he conducted the disciplinary hearing. According to Plaintiff, Lepkowski conducted the hearing without an interpreter, ignored his claim that he had not received proper assistance, improperly ejected him from the hearing room, and concluded the hearing in his absence. Lepkowski found Plaintiff guilty of all charges and sentenced him to 365 days in the Special Housing Unit ("SHU").

Plaintiff appealed Lepkowski's determination, and on May 24, 2016, the Director of the Special Housing Unit, Donald Venettozzi, reversed and expunged the convictions, and ordered that a new hearing take place. On May 25, 2016, new misbehavior reports were served on Plaintiff, asserting the same charges as before.[1]

Neither the original Complaint [#1] in this action nor the Amended Complaint [#4] mentions what happened at the second hearing. However, documents that Plaintiff filed as part of an Article 78 proceeding in New York State Supreme Court, Albany County, indicate that he was convicted of all charges[2] at the second hearing and re-sentenced to 365 days in the SHU.[3] The second disciplinary hearing[4] was conducted by a different

---

[1] Def. Memo of Law, Docket No. [#8-2] at p. 5.
[2] A comparison of Plaintiff's pleadings with the Article 78 documents indicates that both hearings involved identical charges, involving the smuggling of drugs into Elmira inside cans of food. Moreover, Plaintiff indicated in the Article 78 proceeding that the rehearing was based on the same charges as the initial hearing. Docket No. [#8-1] at pp. 44-45.
[3] *See*, Docket No. [#8-1] at p. 26.
[4] Although the Article 78 papers do not refer to Lepkowski or the earlier hearing, they note that the hearing conducted by Escrow was a "rehearing." *See*, Docket No. [#8-1] at p. 20, 24, 26, 44-45.

hearing officer, James Escrow ("Escrow"), who is not mentioned in the pleadings in this action. Plaintiff appealed Escrow's determination, but the appeal was denied and he later filed the aforementioned Article 78 proceeding. In the Article 78 proceeding, Plaintiff asserted essentially the same claims against Escrow that he is attempting to assert here against Lepkowski. The Article 78 proceeding challenging Escrow's determination was dismissed after Plaintiff failed to properly serve the petition on the respondent.[5]

On August 11, 2016, Plaintiff commenced this action, proceeding *pro se*. On September 15, 2016, Plaintiff filed the Amended Complaint. On September 22, 2017, Defendant Lepkowski filed the instant motion to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In sum, Lepkowski contends that the Amended Complaint fails to state actionable claims, since it is based on the first hearing, which was nullified by the second hearing. On this point, Lepkowski cites cases including *Horne v. Coughlin*, 155 F.3d 156, 164 (2d Cir. 2001) ("*Horne*") and *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("*Gaston*"), in which, he maintains, "the Second Circuit has made clear that, regardless of whether the procedures followed at the second hearing comported with the requirements of due process, that hearing simply nullified the first hearing, rendering the first hearing irrelevant to the harm suffered by the plaintiff."[6] Lepkowski contends that while Plaintiff may have served time[7] in SHU between the date of the original misbehavior reports and the re-issued misbehavior reports, such fact does not allow him to sue for alleged due process violations at the original hearing, since the time that he served in SHU during that period was credited to

---

[5] See, Docket No. [#8-1] at pp. 53-54.
[6] Def. Memo of Law, Docket No. [#8-2] at pp. 4-5.
[7] 61 days, at most, which is the period between the two sets of misbehavior reports (March 27, 2016- May 26, 2016).

his sentence following the second hearing, and was thus attributable to the second hearing.[8]

On December 13, 2017, Plaintiff filed a response [#11] to Lepkowski's motion. Plaintiff begins by asserting that in this action, he "challenges both hearings – not solely one of them." However, the Court can quickly dispense with that claim, since it is clearly meritless and incorrect. Even construing the Amended Complaint liberally, as the Court must, it is clear that it is not directed at the second hearing and never mentions Escrow, who conducted the second hearing. Indeed, this action is asserted solely against Lepkowski, who conducted the first hearing.[9]

Alternatively, Plaintiff argues that the first hearing was not nullified by the second hearing, since, "Where there exists a violation of the Constitution, there exists a remedy."[10] Plaintiff then goes on to explain how Lepkowski violated his rights in various ways at the first hearing. Plaintiff further indicates that he "spent approximately the entire penalty in punitive segregation, a period of more than 101 days," which amounted to a significant and atypical hardship. In that regard, though, Plaintiff is clearly referring to the 365-day sentence that he served overall, arguing that it exceeds the "101-day" figure that the Second Circuit has identified as relevant when determining whether a liberty interest is implicated.[11] *See, e.g., Smith v. Arnone*, 700 F. App'x 55, 56 (2d Cir. Nov. 2, 2017)

---

[8] Alternatively, Lepkowski asserts that the time that Plaintiff served in SHU before the first conviction was reversed was not enough to implicate a protected liberty interest.
[9] Even assuming arguendo that the Amended Complaint could be construed as asserting due process violations in both hearings, there is no actionable claim here involving the second hearing since Lepkowski was not involved with that hearing. *See, Livingston v. Kelly*, 561 F. Supp. 2d 329, 333 (W.D.N.Y. 2008) ("Assuming arguendo that the final hearing was somehow tainted or unfair, the fact remains that the harm suffered by plaintiff was directly attributable to the third and final hearing, not to the first hearing. There is no indication that anything that Breckon did or failed to do at that hearing was responsible for the alleged procedural infirmities at the third hearing.").
[10] Pl. Memo of Law [#11] at p. 2.
[11] As noted earlier, Plaintiff served far less than 101 days in connection with the first hearing, before it

4

("[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual.") (quoting *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009)).

ANALYSIS

<u>Plaintiff's *Pro Se* Status</u>

Plaintiff is proceeding *pro se*, and the Court has therefore reviewed his papers "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. Mar. 16, 2018) (citation and internal quotation marks omitted).

<u>Rule 12(b)(6)</u>

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and

---

was reversed.

5

internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[12] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the

---

[12] The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

6

pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

### Section 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004) (citation omitted).

### Due Process at Prison Disciplinary Hearings

Plaintiff contends that Lepkowski denied him due process at the initial hearing, and the Second Circuit has stated the general legal principles concerning such claims is follows:

> "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, "[c]ertain due process protections" must be observed before an inmate may be subject to confinement in the SHU. *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir.2004) (citing *Wolff* ). These protections include "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and

7

> present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Id*. We have [also] interpreted *Wolff* to recognize a right to "appear at the hearing." *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir.1992) (citing *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir.1986)); *see also Willey v. Kirkpatrick*, No. 13–699, 801 F.3d 51, 63, 2015 WL 5059377, at *10 (2d Cir. Aug. 28, 2015) ("Our reading of *Wolff* does not comport with the conclusion that the Constitution permits wholesale exclusion of an inmate from a disciplinary hearing."). "[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir.2004) (internal citations and quotation marks removed).

*Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015).

In this action, Lepkowski contends that Plaintiff's allegations against him are not actionable, since the hearing over which he presided was reversed, and then nullified by the outcome of the second hearing. Further, Lepkowski argues that the sentence that Plaintiff served in SHU was attributable to the fact that he was convicted at the second hearing, not the first. On this latter point, Plaintiff has not disputed Lepkowski's assertion that any time which he may have served in SHU between the filing of the two sets of misbehavior reports was credited to the 365-day sentence that Hearing Officer Escrow imposed following the second hearing.

The Court agrees with Lepkowski on these points, and therefore finds that the Amended Complaint fails to state any actionable claim. *See, Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Gaston's confinement in SHU was entirely attributable to the ruling following the second hearing, *given that the result of the first hearing was administratively overruled and that Gaston's sentence following the second hearing credited his prior time in SHU*. Accordingly, the result of the first hearing did not deprive Gaston of due process.") (emphasis added; citing *Horne*); *see also, Ramos v. Chappius*, No. 15-CV-6600-FPG, 2018 WL 488950, at *2 (W.D.N.Y. Jan. 19, 2018) ("Although

Plaintiff asserts that Defendants violated his rights at the First Hearing, that hearing became null as a result of the Second Hearing. Because Plaintiff's SHU confinement was credited to the penalty imposed at the Second Hearing, his confinement was entirely attributable to the ruling following the second hearing.") (citations omitted); *Livingston v. Kelly*, 561 F.Supp.2d 329, 334 (W.D.N.Y. 2008) (Stating that in *Horne*, "the court concluded that, regardless of whether the procedures followed at the second hearing comported with the requirements of due process, that hearing simply nullified the first hearing, rendering the first hearing irrelevant to the harm suffered by the plaintiff.") (footnote omitted); *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, No. 914CV0539BKSDEP, 2016 WL 5394752, at *21 (N.D.N.Y. Aug. 25, 2016) ("[T]he record establishes that plaintiff was confined in the SHU as a result of penalties imposed following the November 2013 hearing, and remained in SHU confinement until and after the second hearing commenced on March 20, 2014, at which he was again found guilty. Accordingly, based upon the Second Circuit's decision in *Horne*, it is unnecessary to determine whether plaintiff was afforded due process in connection with his first hearing[.]"), report and recommendation adopted, No. 914CV0539BKSDEP, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016).

CONCLUSION

Defendants' motion [#8] to dismiss the Amended Complaint is granted, and this action is dismissed with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed,

on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
January 24, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge